THE STATE OF FLORIDA *ex rel.* T. F. WEST, ATTORNEY GENERAL, *Relator*, v. J. TURNER BUTLER, *Respondent.*

Opinion Filed July 9, 1915.

1. Legislation creating judicial officers to exercise the powers of a co-ordinate department of the government should accord with organic law affecting that subject.

2. While the lawmaking power of the legislature is limited only by the express and clearly implied provisions of the Federal and State Constitutions, and while all fair intendments should be indulged in favor of the constitutionality of a duly enacted statute, yet the provisions expressed and implied of the constitution are superior to legislative esactments, and the Constitution must prevail where a statute conflicts therewith; and where the terms of a statute plainly conflict with an applicable provision of the constitution, it is the duty of the count in proceedings where the matter is appropriately presented, to "support, protect and defend the constitution," by givisg effect to its provisions, even if in doing so the statute is held to be inoperative.

3. Express or implied provisions of the constitution cannot be altered, contracted or enlarged by legislative enactments.

4.  A legislative construction of an ambiguous or uncertain provision of organic law, may be persuasive; but constitutional provisions that are clear and explicit in terms or made so by the history of their adoption and by long continued application and recognition in governmental proceedings, cannot be given by legislation a meaning that conflicts with the terms of such clear and explicit provisions.

5.  In construing and applying provisions of a constitution the leading purpose should be to ascertain and effectuate the intent and object designed to be accomplished.

6.  In determining the meaning of words in a constitution they should be taken not separately, but in conjunction with other words, and should be considered in the light of the purpose of the lawmakers as shown by the provisions as an entirety. When words may import different meanings they should have the meaning and effect designed to be given them as appears by a fair consideration of the whole context in view of the object intended to be accomplished.

7.  Every word of the State constitution should be given its intended meaning and effect, and essential provisions of a constitution are to be regarded as being mandatory.

8.  Where numerals are used in a constitution to indicate a definite number in express provisions, as one Judge, or three Justices, or five County Commissioners, or a tax of one mill, the number expressed should be regarded as a limitation excluding other and different numbers unless the entire context clearly shows a different intent.

9.  Implied repeals, amendments and modifications of organic provisions occur only when the provisions as adopted are positively and irreconcilably repugnant to each other, and then only to the extent of the repugnancy.

10. Distinct provisions of the constitution are repugnant to each other only when they relate to the same subject, are adopted

for the same purpose and cannot be enforced without material and substantial conflict.

11. While the terms of an organic provision will not be strained to imply a limitation upon the law-making power of the Legislature, yet where express and definite limitations are imposed by a separate section of the organic law, amendments of other sections of the constitution will not be construed to remove such fixed limitations further than the terms of the amendments fairly require.

12. Words or terms used in a constitution which is dependent upon a ratification by the people, must be interpreted in a sense most obvious to the common understanding at the time of its adoption.

13. A constitution is not to be made to mean one thing at one time, and another at some subsequent time, when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable.

14. Where a particular construction has been generally accepted and acted upon, and especially when this has occurred contemporaneously with the adoption of the constitution, and by those who had opportunity to understand the intention of the instrument, a strong presumption exists that the construction rightly interprets the intention.

15. Where a constitutional provision will bear two constructions, one of which is consistent with, and the other inconsistent with, an intention expressed clearly in a previous section, the former must be adopted, that both provisions may stand and have effect.

16. A construction of the constitution which renders superfluous or meaningless or inoperative any of its provisions should not be adopted by the courts.

17. A construction that nullifies a specific clause will not be given to a constitution unless absolutely required by the context.

18. In the construction of the constitution, courts have nothing to do with the argument from inconvenience—their duty being simply to declare what the constitution provides.

19. The constitution was intended to be exact in its limitations of power, not to be changed except in such particular and deliberate way as to render as certain as practicable that the electors desired it, evidenced by an expression of judgment after ample time and facility for investigation and maturity of thought on the subject.

20. Under Section 8 of Article V of the Constitution there is an express limitation of one Circuit Judge to each Judicial Circuit of the State, and, as this limitation has not been removed by the amendment of such section in 1901-2, or by amendment of Section 35 of Article V in 1909-10, or by the amendment of Section 1 of Article V in 1913-14, the provision of Section 1 of Chapter 6899, Acts of 1915, purporting to authorize two Circuit Judges for one Judicial Circuit, is in conflict with the constitution and inoperative.

This is an original proceeding in Quo Warranto.

Judgment of ouster entered.

COCKRELL and ELLIS, JJ., dissent.

*Statement.*

The following is the information filed herein:

"In the Supreme Court of the State of Florida.

In the name and by the authority of the State of Florida, Thomas F. West, as the Attorney General of the State of Florida, who sues for the State of Florida and for the people of the State of Florida in this behalf, comes here before the Supreme Court of the State of Florida, on this 14th day of June, during the June Term of said court in the year 1915, and while said court is sitting, and

hereby gives the said court to understand and be informed that J. Turner Butler, a resident and citizen of and in said State and the County of Duval, now and for some time last past has used, enjoyed, exercised and performed, and still does use, enjoy, exercise and perform, all without warrant or authority of law, and in violation of the Constitution of the State of Florida, the franchise, functions, jurisdiction and powers of Circuit Judge of the Twelfth Judicial Circuit of the State of Florida, as hereinafter set forth, and said office and the franchise, functions, jurisdiction and powers thereof the said J. Turner Butler during the time aforesaid usurped and still does usurp, within the State of Florida and within the jurisdiction of this court, upon the State aforesaid and the people of the State aforesaid to their great damage and prejudice. And the Attorney General aforesaid of the State aforesaid, further gives the court to understand and be informed as follows:

1. That it is claimed or pretended by the said J. Turner Butler, that he is such Circuit Judge of the Twelfth Judicial Circuit of the State of Florida, by appointment of the Governor of said State, under and by virtue of an Act of the Legislature of the State of Florida, which Act is as follows:

An act creating an additional Judicial Circuit in the State of Florida to be designated the Twelfth Judicial Circuit and providing for two additional circuit judges therefor, and defining and fixing the territorial limits and boundaries of the Fourth, Eighth and Twelfth Judicial Circuits and prescribing when said Circuit Courts shall take jurisdiction and the effect on pending cases and the time for holding the terms of court in the Fourth and Twelfth Judicial Circuits.

Be it enacted by the Legislature of the State of Florida:

Section 1.   There is hereby created and established an additional judicial circuit in the State of Florida to be known and designated the Twelfth Judicial Circuit of the State of Florida.   This additional judicial circuit shall be composed of the counties of Duval and Nassau.   And for this additional judicial circuit there shall be appointed by the Governor and confirmed by the Senate two additional circuit judges other than the judge of the Circuit Court for Duval County under Section 42 of Article V of the Florida Constitution.

Sec. 2.   The Fourth Judicial Circuit of the State of Florida shall be composed of the counties of St. Johns, Clay and Putnam.

Sec. 3.   The Eighth Judicial Circuit of the State of Florida shall be composed of the counties  of Alachua, Bradford, Levy and Baker.

Sec. 4.   On and after the 7th day of June, A. D. 1915, the Circuit Courts of the Fourth, Eighth and Twelfth Judicial Circuits respectively, then composed of the counties as hereinbefore set forth, shall exercise jurisdiction over their circuits respectively; provided that the judges and State attorneys of the Fourth and Eighth Judicial Circuits respectively, holding office at and before the time this act becomes a law, shall continue without change to exercise jurisdiction over their existing circuits and in the counties therein, respectively, until midnight at the beginning of the seventh day of June, A. D. 1915, and, in the event said additional judges are not then appointed and qualified, until said additional judges shall have qualified.

Sec. 5.   The Circuit Court cases, suits and proceedings pending in the various counties hereinbefore named shall

continue pending therein, whether in one circuit or another, and no civil or criminal case, suit, cause or proceeding, in equity, at law, statutory or otherwise and no writ, process, pleading, motion, information, presentment, indictment, order, finding, decree, judgment or sentence, shall abate, or be quashed, set aside, reversed, qualified, dismissed or defeated, or be held as error by reason of the creation, establishment or organization of the Twelfth Judicial Circuit or of the change in the circuits or of this division or of any designation of the number of the circuit by reason of this law or of any part of this law.

Sec. 6.    There shall be   a State Attorney for    the Twelfth Judicial Circuit who shall be appointed by the Governor and confirmed by the Senate and hold office for the term provided for by the constitution.

Sec. 7.    That the time for holding the terms of the Circuit Court in and for the fourth judicial circuit shall be as hereinafter fixed.    There shall be two regular terms of said court held in each county of the fourth judicial circuit, each year, to be known as the spring and fall term.    The spring term of the Circuit Court for the said fourth judicial circuit shall commence in the county of Clay on the second Monday in April, in the county of St. Johns on the second Monday in May, and in the county of Putnam on the second Monday in June.    The fall term of said court shall commence in the county of Clay on the third Monday in October, in the county of St. Johns on the third Monday in November, and in the county of Putnam on the second Monday in December.

Sec. 8.    There shall be four terms of the Circuit

Court for the twelfth circuit of Duval County beginning in each year on the first Tuesday after the first Monday of January, April, July and October, and any term may extend or continue into the succeeding term pursuant to rules made from time to time by the Circuit Judges or a majority of them residing in said county, and said rules may fix the period of time for the extension, and may limit the application of the extension of the expiring term to a particular case or cases or to a particular class of matters; by like rules a future date may be arbitrarily fixed as to one or more of the various classes of cases for the end of the term without regard to the beginning of a new term above indicated or the adjournment or continuance of a pending term; the first term shall begin as soon after the organization as may be, by order of said circuit judges and without regard to the day of the week or month as above indicated.

Sec. 9. There shall be two regular terms of the Circuit Court for the twelfth judicial circuit for Nassau County, in each year, the spring term to begin on the third Monday in April and the fall term to begin on the first Monday in November. A special term may be held pursuant to law or whenever ordered by the two circuit judges for said circuit court. The circuit judge holding the older commission at the time shall preside or else direct the other circuit judge to preside; but the exercise of jurisdiction in term time or in vacation by either circuit judge shall be valid.

Sec. 10. All laws and parts of laws inconsistent with this law or any part hereof be and the same is hereby repealed.

Sec. 11. This law shall take effect at midnight at the beginning of the seventh day of June, A. D. 1915.

That on to-wit, the 9th day of June, A. D. 1915, the said J. Turner Butler was appointed and commissioned by the Governor of the State of Florida, to be Circuit Judge of the 12th Judicial Circuit of said State of Florida, from the 9th day of June, A. D. 1915, until the end of the ensuing session of the Senate, unless an appointment be sooner made and confirmed by the Senate. That at the time that the said J. Turner Butler was so appointed and commissioned Circuit Judge for the 12th Judicial Circuit of the State of Florida, George Couper Gibbs was, and still is, Circuit Judge for said 12th Judicial Circuit, if the provisions of said alleged Act of the Legislature creating such 12th Judicial Circuit then were, and are, constitutional and not contrary to the Constitution of the State of Florida, and that by the said appointment and commissioning of the said J. Turner Butler by the Governor of the State of Florida, as Judge of the 12th Judicial Circuit of the State of Florida it was attempted to make and appoint the said J. Turner Butler Circuit Judge of said 12th Judicial Circuit in addition to the said George Couper Gibbs, who was then and had been before and still is, the Circuit Judge of the said 12th Judicial Circuit, if there is any 12th Judicial Circuit under the Constitution and Laws of the State of Florida, and by the said appointment and commissioning of the said J. Turner Butler to make and constitute him a second Circuit Judge in and for said alleged 12th Judicial Circuit, and thereby to make and cause to be, two Circuit Judges in and for said alleged 12th Judicial Circuit. But under and by the Constitution of the State of Florida, and provisions thereof, there can be but one Circuit Judge for any Judicial Circuit of the State of Florida, and there can be but one Circuit Judge for said alleged 12th Judicial Cir-

cuit of the State of Florida. That under the Constitution of the State of Florida, it is provided that there shall be a Circuit Judge for Duval County, in addition to the Circuit Judge for the Circuit in which said county is situated, and that at the time the said attempted appointment and commissioning of the said J. Turner Butler as Circuit Judge of said Twelfth Judicial Circuit was made, and done, Daniel A. Simmons was, and still is, such Circuit Judge of the Circuit Court of Duval County. That the said attempted appointment and commissioning of the said J. Turner Butler as Circuit Judge of the 12th Judicial Circuit of the State of Florida, was contrary to and in violation of the Constitution of the State of Florida, and of the provisions thereof, and is illegal and void, and of no effect, and the exercise and use by the said J. Turner Butler of the office, functions and powers of Circuit Judge of the 12th Judicial Circuit of the State of Florida is without warrant of law.

2.   And the Attorney General aforesaid of the State aforesaid further gives the court to understand and be informed as follows: That said alleged Act of the Legislature hereinbefore quoted at length is not in all respects and parts a law of the State of Florida, that is to say, (a) George Couper Gibbs heretofore was duly qualified and commissioned as and acted as the Circuit Judge for the Fourth Judicial Circuit of Florida, and as such Circuit Judge resided in Duval County and not elsewhere, and said Gibbs has continued and is now qualified and commissioned as aforesaid, and continued and is now a resident of said Duval County, and by virtue of the Constitution and the constitutional creation (if it be so created) of the Twelfth Judicial Circuit of Florida composed of Duval and Nassau counties, said Gibbs, so resid-

ing in said Duval County, is the Circuit Judge for the Twelfth Judicial Circuit, and (b) Daniel A. Simmons is and for two years last passed has been the duly qualified, commissioned and acting Circuit Judge for Duval County under Section 42 of Article V of the Florida Constitution, and (c) there can be under the constitution of the State of Florida no other Circuit Judges residing in Duval County than those two next above named, Judges Gibbs and Simmons, whether said Duval County be in the Fourth or the Twelfth or other Judicial Circuit, and (d) James T. Wills is now and for many years has been the duly commissioned, qualified and acting Circuit Judge for the Eighth Judicial Circuit of Florida residing at and before the time of the alleged passage of said Act and still residing in Bradford County, one of the counties composing the said Eighth Judicial Circuit, and (e) S. J. Hilburn is now, if said Act hereinbefore quoted is in that behalf and to that extent a law, and has been continuously since his appointment after said bill became a law and prior to said appointment of said J. Turner Butler, a Circuit Judge as herein set forth and was by the Governor appointed and by the Senate then in session confirmed as the Circuit Judge for the Fourth Judicial Circuit composed of the counties of Clay, Putnam and St. Johns, and said Hilburn for many years up to the present has resided and still resides in said Putnam County and not elsewhere, and as such Circuit Judge said Hilburn was and is duly commissioned, qualified and acting in the event said Act is in that behalf and to that extent a law of said State, and (f) yet said J. Turner Butler, while said Judges Gibbs and Simmons were so qualified, commissioned and acting each residing in said Duval County and not elsewhere, and while said J. Turner But-

ler was residing in said Duval County and not elsewhere, on the ninth day of June, A. D. 1915, the regular session of the Florida Legislature for that year having been theretofore duly adjourned without day and the Senate not being in session, by the Governor of the State of Florida was appointed Circuit Judge for the Twelfth Judicial Circuit of the State of Florida under said Act, and he in due time took the constitutional oath of office and by the Governor was in the usual form commissioned as such judge under date the ninth day of June, A. D. 1915, and (g) said Act is now in full force and effect in so far as it may be, if under the constitution it may be a law in any aspect of it, but (h) that in so far as said Act purports to provide for a circuit judge residing or to reside in Duval County or in Nassau County other than Judge Gibbs or Judge Simmons or the successors of said two Circuit Judges or either of them said Act is unconstitutional and void, and (i) so it is that said Act is void to the extent that it may be relied on to validate the claim by said Butler to hold, use, exercise, enjoy or perform the office of Circuit Judge.

3. And the Attorney General aforesaid of the State aforesaid further gives the court to understand and be informed as follows:

That the said provisions of the said alleged Act of the Legislature of the State of Florida, hereinbefore mentioned and quoted, providing for two additional Circuit Judges for the Twelfth Judicial Circuit of the State of Florida aforesaid, are such a material portion of said Act, and are so connected with the other provisions of said Act, and so permeate the said Act, both in the title and the body thereof, and so affect the provisions and

8

manifest purposes and intent of said Act, that said entire alleged Act of the Legislature is contrary to and in violation of the Constitution of the State of Florida, and the said attempted appointment and commissioning of the said J. Turner Butler as Circuit Judge of the Twelfth Judicial Circuit of the State of Florida, was contrary to and in violation of the Constitution of the State of Florida, and of the provisions thereof, and is illegal and void, and of no effect, and the exercise and use by the said J. Turner Butler of the office, functions and powers of Circuit Judge of the Twelfth Judicial Circuit of the State of Florida, is without warrant of law.

4. And the Attorney General aforesaid, of the State aforesaid, further gives the court to understand and be informed as follows:

That said alleged Act of the Legislature of the State of Florida, hereinbefore mentioned and quoted, is contrary to and in violation of the Constitution of the State of Florida, in that the said alleged Act, in Section 8 and Section 9 thereof, contains provisions regulating the jurisdiction and duties of the Circuit Judges for said Twelfth Judicial Circuit and regulating the practice of a Court of Justice, not a Municipal Court, to-wit, the Circuit Court for the Twelfth Judicial Circuit of the State of Florida, for Duval County, and the Circuit Court for the Twelfth Judicial Circuit of the State of Florida, for Nassau County, respectively, and said Act is a local law, and is not a law of general and uniform operation throughout the State of Florida, and is in violation of and is contrary to Section 20 and Section 21, of Article 3 of the Constitution of the State of Florida That said alleged Act is also unconstitutional because the said provisions thereof concerning the jurisdiction and duties of the Cir-

cuit Judges for said Twelfth Judicial Circuit and regulating the practice of said courts, is not expressed in the title of said Act, and is a different and distinct subject from that of creating the Twelfth Judicial Circuit and defining and fixing the territorial limits and boundaries of the Fourth and Twelfth Circuits, and prescribing when said Circuit Courts shall take jurisdiction and the effect on pending cases and the times for holding the terms of court in the Fourth and Twelfth Judicial Circuits, and matters properly connected therewith, and is in violation of Section 16 of Article 3 of the Constitution of the State of Florida.

5. And the Attorney General aforesaid, of the State aforesaid further gives the court to understand and be informed as follows:

A bill called Senate Bill 282 with the title and eleven sections was introduced in the Senate of the State of Florida on the 21st day of April, A. D. 1915, when the Legislature of said State was duly convened and acting in regular session at Tallahassee, in the words of said Act of the Legislature hereinbefore quoted, and said bill is alleged to have become an act of the Legislature of the State of Florida, notwithstanding the Governor's objections by having passed both houses by a two-thirds vote of the members, during said session of the Legislature aforesaid, and is alleged to have become a law of said State when so passed and certified to the Secretary of State of the State of Florida on the 18th day of May, A. D. 1915, but the fact is that said bill failed to become a law in that, among other constitutional defects, as exhibited by the journal of the two houses and the original enrollment in the custody of the Secretary of the State

of Florida, when on Saturday, the 15th day of May, A. D. 1915, the Governor's message returning said bill without his approval was read to the House of Representatives, the question was put by the Speaker, 'Shall the Act pass the objections of the Governor to the contrary notwithstanding?' and the vote thereon as set out in the journal was 32 yeas and 25 nays, giving the name of each member present and how he voted; and on Monday next following, May 17th, Mr. Dancy, one of the 25 members voting in the negative moved the rules be waived for the purpose of moving a reconsideration of the vote by which the House sustained the Governor's veto as aforesaid, which motion was agreed to by a two-thirds vote.

Mr. Dancy moved that the House reconsider the vote by which the Governor's veto was sustained on—

An Act creating an additional Judicial Circuit in the State of Florida, to be designated the Twelfth Judicial Circuit, and providing for two additional Circuit Judges therefor, and defining and fixing the territorial limits and boundaries of the Fourth, Eighth and Twelfth Judicial Circuits, and prescribing when said Circuit Courts shall take jurisdiction, and the effect on pending cases, and the time for holding the terms of court in the Fourth and Twelfth Judicial Circuits.

The same having been Senate Bill No. 282.

Mr. Lewis, another member of the House who voted in the negative, made the point of order that it was out of order to reconsider the vote by which the veto of the Governor was sustained.

Which point was overruled by the Speaker.

Mr. Dancy moved that he rules be further waived and that the motion to reconsider be taken up and considered at this time.

VOL. 70, JUNE TERM, 1915.          117

State ex rel. West v. Butler—Statement of Case.

Which was agreed to by a two-thirds vote.

The question then recurred upon the motion to re-consider the vote by which the house sustained the Governor's veto on Senate Bill No. 282.

Which was agreed by a two-thirds vote.

The question then recurred upon the question, 'Shall the Bill pass the veto of the Governor to the contrary notwithstanding?'

Mr. Lewis made the point of order that it was out of order to reconsider the vote by which the veto of the Governor was sustained which point was overruled by the Speaker; and that thereupon on said Monday upon the call of the roll of the House upon the question above quoted as set out in the Journal fifty-one members of the House as named in the Journal voted yea, and ten members of the House, as named in the Journal, voted no, and there thus being more than two-thirds of the total membership of the House voting in the affirmative, the Speaker announced that said Act, having received the necessary two-thirds vote, passed the Governor's objections thereto notwithstanding; but, so it is, because of the fact that less than two-thirds of the members present voted in favor of the passage of said bill at the only time when such voting was within the purview of the constitution, said bill failed to become a law.

6. And the Attorney General aforesaid of the State aforesaid further gives the court to understand and be informed as follows:

Said bill or Act quoted at length, originally called Senate Bill 282, even if it were in due season and in due form passed and enacted, yet it is not a law of the State of Flōrida, in that in its title and in its body it fails to comply with Section 16. of Article III of the Florida Con-

stitution in that it does not 'embrace but one subject and matter properly connected therewith.'

And, so it is, the Attorney General of the State of Florida does give this court to understand and be informed that said J. Turner Butler without warrant or authority of law and in violation of the Constitution of the State of Florida, has usurped and still does without warrant so usurp the said franchises, functions, jurisdiction and powers of the office of Circuit Judge as aforesaid to the great damage and injury of the State of Florida and of the people of the State of Florida.

Whereupon the said Thomas F. West as the Attorney General of the State of Florida, for the said State and in the name and by the authority of the said State, prays the consideration of the Supreme Court of the State of Florida in the premises and due process of law to the said J. Turner Butler in this behalf to answer to the State of Florida by what warrant of authority he claims to use, exercise, enjoy and perform the franchise, functions, jurisdiction and powers of Circuit Judge aforesaid.

Thomas F. West,<br>
Attorney General of the State of Florida.

Charles M. Cooper, of Counsel."

The respondent appeared by counsel and presented the following demurrer to the information, in which the relator joins: "Comes now the respondent J. Turner Butler, by his attorneys, and demurs to the information filed herein, for that the same is bad in substance; and as grounds of law to be argued in support of this demurrer, says that the said information shows on its face that this respondent has been duly and legally appointed and qualified as Judge of the Twelfth Judicial Circuit of the State

of Florida, in accordance with the Constitution of said State and laws passed in accordance therewith."

The following motion to quash the information was also filed:

"In the above entitled matter, now comes the said J. Turner Butler and moves the court to quash the information in the above entitled cause and the proceedings thereunder, on the ground that as shown by said information he is duly appointed, confirmed and commissioned Circuit Judge of the Twelfth Judicial Circuit of the State of Florida, under and by virtue of the Constitution of the State of Florida and as provided for in said Constitution, in accordance with the Act of the Legislature of the State of Florida, set forth in said information; the same having been constitutionally and validly enacted by the Legislature of the State of Florida."

*T. F. West,* Attorney General, and *C. M. Cooper,* for Relator;

*Cockrell & Cockrell, J. C. Cooper & Son, E. J. L'Engle, Axtell & Rinehart, F. P. Fleming, Carter & McCollum, Wm. H. Baker, Odom & Crawford, Geo. M. Powell, Kay & Doggett, Knight & Adair, Jas. E. Calkins, H. E. Merryday* and *John E. Hartridge & Son,* for Respondent.

WHITFIELD, J., (*after stating the facts.*) Quo warranto proceedings are brought in this court to determine whether the Honorable J. Turner Butler is lawfully Judge of the Twelfth Judicial Circuit to which office he was appointed under a statute set out in the statement which is alleged to have been enacted over the Governor's veto.

It is contended that this statute is invalid because the bill having been vetoed by the Governor, one house of the Legislature voted to sustain the veto and then waived its rules by a two-thirds vote and reconsidered the vote sustaining the veto, after which under a waiver of the rules of the house by a two-thirds vote, the bill was, by the requisite vote, passed notwithstanding the Governor's objections thereto. The argument is that as the first vote sustained the veto, there was no power in the body to reconsider such vote and to pass the bill over the Governor's veto.

The constitution provides that when a bill is returned to either house of the Legislature with the Governor's objections thereto, the house "shall proceed to reconsider it; if, after such reconsideration, it shall pass both houses by a two-thirds vote of members present, which vote shall be entered on the Journal * * *, it shall become a law."

Another section of the organic law provides that "each house shall * * * determine the rules of its proceedings."

A right to reconsider action taken is an attribute of all deliberative bodies, and it is not forbidden to the Legislature by the constitution. When not otherwise provided by law all deliberative bodies have a right during the session to reconsider action taken as they deem proper, and it is the final result only that is to be regarded as the thing done. Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963; Smith v. Jennings, 67 S. C. 324, 45 S. E. Rep. 821.

No provision of the constitution appears to have been violated in reconsidering the vote by which the Governor's veto was sustained and in subsequently passing the

bill over the Governor's veto by the requisite two-thirds vote under the circumstances alleged in this case.

The primary question presented is whether under the constitution the Legislature has the power to provide for more than one Circuit Judge to be appointed for one Judicial Circuit of the State.

As pertinent to this enquiry the following sections of Article V of the Constitution should be considered:

"The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Court of Record of Escambia County, Criminal Courts, County Courts, County Judges and Justices of the Peace and such other courts or commissions as the Legislature may from time to time ordain and establish. The Legislature may prescribe the compensation of the Justices and Judges of the several courts, but no court heretofore established under the Constitution and laws of Florida shall be hereby abolished." Sec. 1, Art. V as amended 1913-14.

"There shall be eight Circuit Judges, who shall be appointed by the Governor and confirmed by the Senate, and who shall hold their office for six years.

The State shall be divided by the Legislature, at its first regular session after the adoption of this section, into eight Judicial Circuits, and one judge shall be assigned to each Circuit. Such judge shall hold at least two terms of his court in each county within his Circuit every year, and at such times and places as shall be prescribed by law, and may hold special terms.

The Governor may, in his discretion, order a temporary exchange of Circuits by the respective judges, or order any judge to hold one or more terms or part or parts of any term in any other Circuit than that to which he is

assigned. The judge shall reside in the Circuit of which he is judge.

This section shall not be operative until the Legislature shall have divided this State into eight Circuits, as hereinbefore provided for, and the seven Circuit Judges holding office at the time of such division shall continue to exercise jurisdiction over their several existing Circuits as constituted at the time of such division, until the judge of the additional Circuit shall have qualified. The Circuit Judges holding office at the time of such division shall severally continue in office until the expiration of their existing term of office as judges of the Circuits respectively in which, under such division, the county of his residence may be included; and a judge for the additional Circuit shall be appointed for a term equal to the unexpired term of the other Circuit Judges upon such division being made. The salary of each Circuit Judge shall be two thousand, seven hundred and fifty dollars." Sec. 8, Art. V as amended in 1901-2.

"No courts other than herein specified shall be established in this State, except that the Legislature may provide for the creation and establishment of such additional Judicial Circuits as may from time to time become necessary, and for the appointment by the Governor and confirmation by the Senate of additional Circuit Judges therefor, whose terms of office and general jurisdiction shall be the same as is herein provided for the Circuit Judges herein already provided for, and may clothe any Railroad Commission with judicial powers in all matters connected with the functions of their office." Sec. 35, Art. V as amended 1909-10.

The subjects and purposes of these sections are different. Section one designates the courts and commissions

in which the judicial power of. the State is or may be vested. Section eight provides for a definite system of Circuit Courts consisting of a fixed member of Judicial Circuits and a fixed number of Circuit Judges, one judge to be assigned to each Circuit and to reside therein to exercise the jurisdiction conferred upon Circuit Courts and Circuit Judges by Section 11, Art. V. Section 35 forbids the establishment of other courts than those enumerated or provided for therein.

Questions of power, not of policy are to be considered, and any doubts as to its validity should be resolved in favor of a statute alleged to be unconstitutional. State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929.

Legislation creating judicial officers to exercise the powers of a co-ordinate department of the government should accord with organic law affecting that subject.

While the lawmaking power of the legislature is limited only by the express and clearly implied provisions of the Federal and State Constitutions, and while all fair intendments should be indulged in favor of the constitutionality of a duly enacted statute, yet the provisions expressed and implied of the constitution are superior to legislative enactments, and the Constitution must prevail where a statute conflicts therewith; and where the terms of a statute plainly conflict with an applicable provision of the constitution, it is the duty of the court in proceedings where the matter is appropriately presented to "support, protect and defend the constitution," by giving effect to its provisions, even if in doing so the statute is held to be inoperative. See Brown v. City of Lakeland, 61 Fla. 509, 54 South. Rep. 716; State *ex rel.* Loftin v. McMillan, 55 Fla. 254, 45 South. Rep. 882; State *ex rel.* Bours v. L'Engle, 40 Fla. 392, 24 South. Rep. 539; State *ex rel.*

Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; Board of Public Instruction for Santa Rosa County v. Croom, 57 Fla. 347, 48 South. Rep. 641; State *ex rel.* Willie v. Barnes, 22 Fla. 8; State *ex rel.* Chestnut v. King, 20 Fla. 399; State *ex rel.* Pleasure v. McClellan, 25 Fla. 88, 5 South. Rep. 600; Webster v. Powell, 36 Fla. 703, 18 South. Rep. 441. . Express or implied provisions of the constitution cannot be altered, contracted or enlarged by legislative enactments. A legislative construction of an ambiguous or uncertain provision of organic law, may be persuasive; but constitutional provisions that are clear and explicit in terms or made so by the history of their adoption and by long continued application and recognition in governmental proceedings, cannot be given by legislation a meaning that conflicts with the terms of such clear and explicit provisions.

In construing and applying provisions of a constitution the leading purpose should be to ascertain and effectuate the intent and object designed to be accomplished. In determining the meaning of words in a constitution they should be taken not separately, but in conjunction with other words, and considered in the light of the purpose of the lawmakers as shown by the provisions as an entirety. When words may import different meanings they should have the meaning and effect designed to be given them as appears by a fair consideration of the whole context in view of the object intended to be accomplished. See Mugge v. Warnell Lumber & Veneer Co., 58 Fla. 318, 50 South. Rep. 645; Ex parte Cox, 44 Fla. 537, 33 South. Rep. 509; Jackson v. State, 33 Fla. 620, 15 South. Rep. 250. Every word of a State constitution should be given its intended meaning and effect, and essential provisions of a constitution are to be regarded as being man-

datory. Crawford v. Gilchrist, 64 Fla. 41, 59 South Rep. 963.

Where numerals are used to indicate a definite number in express provisions, as one Judge, or three Justices, or five County Commissioners, or a tax of one mill, the number expressed should be regarded as a limitation excluding other and different numbers unless the entire context clearly shows a different intent.

The substance of the above quoted organic provisions is that "The judicial power of the State shall be vested in a Supreme Court, Circuit Courts * * and such other courts or commissions as the legislature may from time to time ordain and establish." "There shall be eight Circuit Judges." "The State shall be divided * into eight Judicial Circuits, and one judge shall be assigned to each Circuit." "The judge shall reside in the Circuit of which he is judge." "No courts other than herein specified shall be established in this State except that the Legislature may provide for the creation and establishment of such additional Judicial Circuits as may from time to time become necessary, and for the appointment by the Governor and confirmation by the Senate of additional Circuit Judges therefor."

If the provisions that "there shall be eight Circuit Judges" and that "the State shall be divided * into eight Judicial Circuits, and one judge shall be assigned to each Circuit," are a limitation upon the number of Circuit Judges that may be appointed by the Governor and confirmed by the Senate for any Judicial Circuit of the State, then the limitation remains until it is removed by a constitutional amendment. Such an amendment may be express in terms or implied from language that is clearly repugnant to the provisions imposing the limitation. See Board

of Public Instruction of Polk County v. Board of Com'rs of Polk County, 58 Fla. 391, 50 South. Rep. 574.

Does Section 8 of Article V as amended in 1901-2, limit the number of Circuit Judges to one for each Circuit?

As was said in State *ex rel.* v. Jacksonville Terminal Co., 41 Fla. 377, text 401, 27 South. Rep. 225, "In construing constitutions as well as statutes the object is to ascertain the true intention or meaning expressed in the instrument. Where the language is plain and unambiguous, there is nothing to construe—the meaning conveyed by plain and unambiguous language must not be changed or distorted by the application of any technical rule of construction. There does not appear to be any ambiguity in the language used in this section."

As it is specifically provided by Section 8 that there shall be eight Judicial Circuits and eight Circuit Judges, one judge to be assigned to each Circuit, there is no escape from the demonstration that under such section there shall be one and only one Circuit Judge for each Judicial Circuit.

The provision of Section 8 that there shall be "one judge" for each Judicial Circuit is as much a limitation upon the number that may be provided as are the organic provisions for "one judge for each" Criminal Court of Record or "one justice of the peace for each" district, or "a county commissioner" for each district, or a special tax of "one mill" for public free schools, or the former provisions that "the salary of the Justices of the Supreme Court shall be three thousand dollars a year," and that "the salary of each Circuit Judge shall be two thousand, seven hundred and fifty dollars" and that "there shall be eight Circuit Judges" and "eight Judicial Circuits" which

last three provisions are contained in the same amended Section 8; and the limitations contained in the last three provisions required constitutional amendments to remove them. See State *ex rel.* Russell v. Barnes, 25 Fla. 75, 5 South. Rep. 698.

The Constitution of 1839 provided in Section 5 of Article V that "the State shall be divided into at least four convenient Circuits, * * * and for each Circuit there shall be appointed a judge." A constitutional amendment to Section 11 of Article V in 1853 provided that "there shall, be elected by the qualified electors of each of the re-spective Judicial Circuits of this State, one Judge of the Circuit Court." The Constitution of 1865 provided in Section 4 of Article V that "the State shall be divided into convenient Circuits; and for each Circuit there shall be a judge," and also provided in Section 11 of Article V that "there shall be elected * * * by the qualified electors of each of the respective Judicial Circuits of this State, one judge of the Circuit Court." In each of these two or-ganic instruments the words "a judge" as used in one section was in another section shown to mean "one judge." When "one" and "a" are used interchangeably, "a" must mean "one," and one is a limitation.

The Constitution of 1868 provides in Section 7 of Article VI that "There shall be seven Circuit Judges. * * * The State shall be divided into seven Judicial Circuits * * * and one judge shall be assigned to each Circuit." The original Section 8 of Article V of the Constitution of 1885 now in force, provides that "There shall be seven Circuit Judges * * * . The State shall be divided into seven Judicial Circuits, and one Judge shall be assigned to each Circuit."

When the provisions of the Constitutions of 1839 and

1865 are considered, the express provision in the constitutions of 1868 and 1885 for a stated number of Judicial Circuits and also a stated similar number of Circuit Judges and for "one judge" for each Circuit, and there being no exception or inconsistent provision on the subject, is significant of an intended express and definite limitation as to the number of Circuit Judges for any Judicial Circuit. The fact that a court may consist of more than one judge would prompt the provision for "one judge" as a limitation of the number to be provided for each Circuit. We have found no adjudication that a provision for "one judge" for a court is not a limitation but means "at least one judge."

In Streeter v. McLane, 19 Idaho 229, 112 Pac. Rep. 1042, the constitution provided for "five Judicial Circuits, for each of which a judge shall be chosen * * * but the legislature may reduce or increase the number of districts, district judges, and district attorneys." It was held that the legislature could provide for more than one judge in a district since there was no fixing of the number of judges, and the provision that "for each of which (districts) a judge shall be chosen" was supplemented by an express provision that the legislature may *increase the number* of district judges.

The case of State *ex rel.* Breeden v. Lewis, 26 Utah 120, 72 Pac. Rep. 388, is similarly disposed of. In State v. Stevenson, 18 Neb. 416, 25 N. W. Rep. 585, the legislature was expressly authorized to "increase the number of judges of the district courts and the judicial districts of the State." In State v. Kinkead, 14 Nev. 117, the first judicial district of the State was given three district judges and the legislature was authorized to increase or diminish "the number of the judicial districts and

VOL. 70, JUNE TERM, 1915. 129

State ex rel. West v. Butler.—Opinion of Court.

judges therein," it was held that the legislature could reduce the number of district judges after the first election. See also State v. Atherton, 19 Nev. 332, 10 Pac. Rep. 901; Groff, In re, 21 Neb. 647, 33 N. W. Rep. 426. These and other kindred cases with organic provisions materially different from ours, are not authority for the proposition that more than one Circuit Judge may be provided for a Judicial Circuit of this State. See State v. Martin, 60 Ark. 343, 30 S. W. Rep. 421, where it was said that a numerical designation of "one judge" would be a limitation while the provision for "a judge" would under the provisions of that organic law permit the legislature to provide for more than one judge for a Judicial Circuit. In this case the court said: "Nowhere do we find any limitation upon the number of Circuit Judges for a Circuit." For a like decision see State v. Hutchings, 79 Kan. 191, 98 Pac. Rep. 797.

In Barber v. State, 13 Fla. 675, it was held that under a constitutional provision each Circuit Judge "shall hold two terms of his court in each county within his Circuit each year," the judge could, under a pre-existing statute, hold extra or special terms in addition to the two terms mentioned in the constitution, since the later organic provision was not repugnant to the existing statute, and showed no intent to limit the power of the legislature to authorize extra or special terms. This case is not authority for the proposition that Section 8 in providing for "one judge" in each circuit, "at least one judge" was meant. Particularly is this so when amended Section 8 also specifically ordains that there shall be eight judicial circuits and eight circuit judges. It is clear that Section 8 of Article V imposed a limitation of one judge for each judicial circuit. This provision remains a potential lim-

itation upon the power of the legislature until duly re-pealed, amended or modified by constitutional amendment adopted in accord with organic law. How far does Section 35 as amended modify Section 8 as amended?

Section 8 as amended in 1901-2 relates to the creation of judicial circuits and the appointment of one judge for each judicial circuit and makes other incidental provisions therein, while Section 35 as amended in 1909-10 provides "that no courts other than herein specified shall be established in this State, except that the legislature may provide for * * * additional judicial circuits * * * and for * * additional circuit judges therefor." This latter section relates to courts that may be established, and the provision as to circuit judges is an appropriate accompaniment to the provision for additional judicial circuits. "Judicial circuits" refer to subdivisions of the State to each of which "one judge" shall be assigned to exercise therein the judicial power conferred by the constitution upon circuit courts.

Implied repeals, amendments and modifications of organic provisions occur only when the provisions as adopted are positively and irreconcilably repugnant to each other, and then only to the extent of the repugnancy. See State v. Gadsden County, 63 Fla. 620, 58 South. Rep. 232; Florida East Coast R. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272; State ex rel. Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171; State ex rel. Loftin v. Mc-Millan, 55 Fla. 254, 45 South. Rep. 881.

Distinct provisions of the constitution are repugnant to each other only when they relate to the same subject, are adopted for the same purpose and cannot be enforced without material and substantial conflict. See Cooley's

Const. Lim. (7th Ed.) page 92; People v. Burtleson, 14 Utah 258, 47 Pac. Rep. 87.

While the terms of an organic provision will not be strained to imply a limitation upon the lawmaking power of the legislature, yet where express and definite limitations are imposed by a separate section of the organic law, amendments of other sections of the constitution will not be construed to remove such fixed limitations further than the terms of the amendment fairly require. Amended Section 35 does not revise amended Section 8, as was the case in Advisory Opinion, 15 Fla. 739.

To give authority to "provide for the creation and establishment of * * * additional judicial circuits" is the prime object of section 35 as amended, and the words "and for * * additional circuit judges therefor" obviously have reference to the preceding words "additional judicial circuits." The plural words "additional circuit judges" are manifestly used as the legal and grammatical accompaniment of the antecedent and controlling plural words "additional judicial circuits." The "judicial circuits" are subdivisions within which a circuit judge presides over a circuit court.

The amendments to Article V of the constitution have been specific and somewhat restrictive. Not one of them purports to change the provision that the State shall be divided into judicial circuits, "and one judge shall be assigned to each circuit." Section 35 as amended does not revise Section 8, but recognizes the requirement of amended Section 8 that the State shall be divided into judicial circuits with one judge for each circuit, the provision for "additional circuit judges" being made in view of the purpose to have a judge for each new division of territory into a judicial circuit and in view of the requirement

of Section 8 that "there shall be eight circuit judges." The "additional" circuits and "additional" judges authorized by amended Section 35 are a larger number of the circuits and a corresponding number of the Circuit Judges so that there shall be one judge for each circuit as is expressly and definitely provided for by amended Section 8.

When more tribunals were needed for the dispatch of the judicial business of the State, the amendments to Sections 1, 8 and 35 of Article V of the Constitution designed to provide for such tribunals, provided for additional courts, not for additional judges. Comparative advantages of additional judges rather than additional courts, cannot cause a change in the constitution or in its settled construction.

It is argued that in amending Section 35 instead of Section 8, and in using the words "and * * * additional Circuit Judges therefor," an intent is shown to remove the limitation of Section 8 as to the number of Circuit Judges that may be provided for each Judicial Circuit as well as to remove the limitation as to the number of Judicial Circuits that may be established. But this is untenable, since the two sections relate to different subjects, and there is no express repeal or amendment or revision of Section 8, but only an implied modification of such provisions of Section 8 as are in positive repugnance to Section 35 as amended. The quoted language is prudently used if it is not necessary to avoid uncertainties that might otherwise have arisen from the necessity to have one judge for each new subdivision of the State into a Judicial Circuit, and from the limitation in Section 8 that "there shall be eight Circuit Judges;" and such words "additional Circuit Judges therefor," are appropriate to

. VOL. 70, JUNE TERM, 1915.    133

State ex rel. West v. Butler.—Opinion of Court.

show an intent on the part of the Legislature and the electors at the polls to provide for additional Circuit Judges so that there shall be one judge for each of the "additional Judicial Circuits" that may be established under amended Section 35. Words or terms used in a constitution which is dependent upon a ratification by the people, must be interpreted in a sense most obvious to the common understanding at the time of its adoption. Bishop v. State ex rel. Griner, 149 Ind. 223, 48 N. E. Rep. 1038. This construction is consistent with Section 8 and should be adopted that both may stand, the provisions not being repugnant. Chance v. County of Marion, 64 Ill. 66.

The terms, the history and the governmental application of our constitution establish a system of Circuit Courts with one Judge for each Circuit, and the amendments adopted clearly show an intent to continue and extend the established system by increasing the number of Judicial Circuits with one Judge for each Circuit, as was done pursuant to amended Section 35, by Chapter 6197, Acts of 1911, which in effect created three additional Judicial Circuits with one Judge for each Circuit. Chapter 6197 is a contemporaneous legislative construction of the meaning of amended Section 35. This being the supreme law of the land on the subject, the legislature and the courts have no power to change or vary the paramount law to meet conditions in a particular section of the State, however desirable a change there of such system may be. The constitution makes provision for its amendment; and the amendments made disclose no intent to depart from the system of Circuit Courts originally established. This system expressly provides for "one judge" in each Circuit, and the only instance in which more than one Circuit Judge in any Judicial Circuit has been authorized,

was by constitutional amendment in 1911-12, now Section 42 of Article V, which does not change the original system, but makes a special and exceptional provision for a Circuit Judge for Duval County to meet new and peculiar conditions in a particular county. This constitutional amendment, as its terms plainly indicate, is a construction by the legislature and by the electorate at the polls that under amended Section 35 only one Circuit Judge may be provided by the legislature for any one Circuit. The construction of Section 35 more nearly contemporaneous with its adoption is preferred if there be ambiguity or doubt as to its meaning. See Cooper Manuf'g Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. Rep. 739; McPherson v. Blacker, 146 U. S. 1, 13 Sup. Ct. Rep. 3; Maize v. State, 4 Ind. 342. A constitution is not to be made to mean one thing at one time, and another at some subsequent time, when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable. Scott v. Sanford, 19 How. 393, 15 U. S. (L. Ed.) 691; South Carolina v. U. S., 199 U. S. 437, 26 Sup. Ct. Rep. 110, 50 U. S. (L. Ed.) 261, 4 Ann. Cas. 737; Cory v. Carter, 48 Ind. 327, 17 Am. Rep. 738; Ex parte Woods, 52 Tex. Crim. Rep. 575, 108 S. W. Rep. 1171, 124 A. S. R. 1107, 16 L. R. A. (N. S.) 450; 6 R. C. L., Sec. 39; Cox v. Robinson, 105 Tex. 426, 150 S. W. Rep. 1149. Where a particular construction has been generally accepted and acted upon, and especially when this has occurred contemporaneously with the adoption of the constitution, and by those who had opportunity to understand the intention of the instrument, a strong presumption exists that the construction rightly interprets the intention. Cooley's Cons. Lim. (7th ed.) p. 102. Where a constitutional provision will bear two constructions, one

## VOL. 70, JUNE TERM, 1915. 135

State ex rel. West v. Butler.—Opinion of Court.

of which is consistent with, and the other inconsistent with, an intention expressed clearly in a previous section, the former must be adopted, that both provisions may stand and have effect. Chance v. County of Marion, 64 Ill. 66. A construction of the constitution which renders superfluous or meaningless or inoperative any of its provisions should not be adopted by the courts. State ex rel. Crow v. Hostetter, 137 Mo. 636, 39 S. W. Rep. 270, 38 L. R. A. 208, 59 Am. St. Rep. 515. All the provisions of Article V should be considered in determining the meaning of Section 35 of that Article. See State v. Kyle, 8 West Va. 711; Haggart v. Alton, 29 S. Dak. 509, 137 N. W. Rep. 372; State ex rel. Gray v. Hodges, Ark. , 154 S. W. Rep. 506; 6 R. C. L. Sec. 42; State v. Atlantic Coast L. R. Co., 56 Fla. 617, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639.

Organic provisions relating to the jurisdiction and procedure of courts may by fair implication also include the jurisdiction and procedure of the judge or judges who constitute the court. See State v. Johnson, 13 Fla. 33, where it was held that the statute could authorize a judge of the appellate court to make supersedeas orders, such orders being regulated by an existing statute and the statute not being repugnant to the constitution. In several cases it has been held that statutes are not repugnant to the constitution in regulating the jurisdiction of Circuit Judges not in term time, and in other Circuits by temporary assignment or exchange of Circuits, and in making orders in cases pending in other Circuits where the resident judge can not act, and in trials de novo, &c. See Ex parte Henderson, 6 Fla. 279; Ex parte Daly, 66 Fla. 345, 63 South. Rep. 834; Atlantic Coast Line R. Co. v. Mallard, 53 Fla. 515, 43 South. Rep. 755; Thebaut v.

Canova, 11 Fla. 143; Swepson v. Call, 13 Fla. 337; State *ex rel.* Florida Pub. Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614; Bacon v. State, 22 Fla. 46; Simonton v. State *ex rel.* Turman, 44 Fla. 289, 31 South. Rep. 821; McGee v. Anderson, 33 Fla. 499; A. C. L. Ry. v. Mallard, 53 Fla. 515. But the question here is not as to the jurisdiction of a legally existing court or judge. The controversy is as to the legal authority of the respondent to be a Circuit Judge. Where there are express organic provisions and limitations as to the number and establishment of courts and also as to the number of the judges of such courts, an amendment giving authority to increase the unmber of the courts will not be regarded as authorizing an increase of the number of judges of such courts, unless that intent clearly appears by the language used. This is particularly so when as here the organic provisions in one section include a separate express limitation as to the number of judges for each such court, and the amendment is not of that section, but of another section which relates to the courts that may be established, and not to the judges of courts. The only provision in amended Section 35 that relates to judges is legally and grammatically entirely in accord with the provision and fixed limitation of Section 8 that there shall be one judge for each of the Circuits; and the terms of the amendment do not plainly indicate an intent to authorize an increase of the judges for a Circuit as distinguished from an increase of the number of Judicial Circuits, so that there may be more Circuit Courts, which latter is the manifest intent of the amendment. The express authority given by Section 35 as amended to provide "additional" judges is as a complement to and to correspond in number with the "additional" Judicial Circuits that are established, so

that the express organic provision and limitation that
"one judge shall be assigned to each Circuit" will be com-
plied with.   Constitutions should not  be regarded as
amended by implication unless there is a clear repugnancy
between the old and the new provisions.   See Board of
Public Instructions of Polk County v. Board of Com'rs of
Polk County, 58 Fla. 391, 50 South. Rep. 574.   A con-
struction that nullifies a specific clause will not be given
to a constitution unless absolutely required by the context.
See Marbury v. Madison, 1 Cranch (U. S.) 137; Ferrill
v. Keel,    Ark.    , 151 S. W. Rep. 269.   The clause
"and for * * * additional Circuit Judges therefor" con-
tained in amended Section 35 is not surplusage since it
is appropriate, if not necessary, in view of the express
provision of Section 8 that "there shall be eight Circuit
Judges."   Otherwise the right to have additional judges
for additional circuits would depend upon implication.   A
Circuit Judge together with a Judicial Circuit is necessary
for the establishment of a Circuit Court.

   If the organic provision that "one judge shall be as-
signed to each Circuit" does impose a limitation upon the
legislature and such limitation may be dispensed with by
official action to remedy a hardship in a particular case,
then any and all other limitations of the State constitu-
tion may likewise be ignored as convenience   suggests
thereby rendering impotent the supreme law of the land.
Butler v. Andreus, 35 Mont. 575, 90 Pac. Rep. 785.

   Section 35 as amended authorizes "additional Judicial
Circuits * * * and additional Circuit Judges therefor,
whose terms of office and general jurisdiction shall be the
same as herein provided for Circuit Judges herein already
provided for."

   The effect of amended Section 35 is to make amended

Section 8 read : ·"There shall be eight (or more) Circuit Judges, * * * . The State shall be divided * * * into eight (or more) Judicial Circuits, and one judge shall be assigned to each Circuit." The additional Circuits and Judges therefor that may be provided for, become a part of the system established by Section 8, and each additional Circuit Court established has the same attributes with the same limitations when in existence that apply to the original eight Circuits. The word "additional" is used in Section 8 as amended which increased to eight the number of Circuit Courts that *"shall"* be established; and the same word "additional" as used in amended Section 35 has the same meaning and effect that it had in amended Section 8. It shows an intent to authorize an increase of the number of Judicial Circuits and Circuit Judges so that there may, if necessary to meet the demands of litigation, be more Circuit Courts as a part of the system of Circuit Courts provided for by amended Section 8.

By Section 8 as amended and Section 11 of Article V, the constitution provides for a continuance of the definite and comprehensive system of Circuit Courts that has been established in this State from the beginning of the State government. The essential elements of such system of Circuit Courts are expressly defined and provided for, *viz*, Judicial Circuits with Circuit Judges, their jurisdiction and their tenure. Eight Judicial Circuits and eight Circuit Judges with one judge for each Circuit, who shall reside therein, are *mandatorily required,* while additional Judicial Circuits with a corresponding number of Circuit Judges therefor who shall have like jurisdiction and tenure *may* be provided. All are provided by the legislature though eight *must* be provided, while others *may* be provided. Those subsequent to eight as well  as the first

VOL. 70, JUNE TERM, 1915.        139

State ex rel. West v. Butler.—Opinion of Court.

eight constitute a part of the complete system of Circuit Courts definitely provided for in the Constitution. Each has the same essential attributes—a Judicial Circuit and one Circuit Judge with the fixed jurisdiction and tenure, whether it is of the first eight, or of those established subsequent thereto. This is the necessary effect of the language used in amended Sections 8 and 35. Section 35 as amended does not contemplate a new or different system of Circuit Courts, but an extension of the system provided for by Section 8.

The provisions authorizing "additional judicial circuits" and "additional Circuit Judges therefor" appear in amended Section 35, and such provisions do not modify the mandatory requirement in Section 8 of one Judge for each Circuit, as there is no clear repugnancy in such provisions, the plain meaning being to authorize additional judges when and as additional circuits are created, so that the established system of Circuit Courts with one Judge for each Circuit may be preserved and extended to meet the requirements of growth and development.

Does Section 1 as amended in 1913-14 authorize more than one Circuit Judge for each Judicial Circuit? Where the constitution in a separate section expressly provides for a fixed system and number of Circuit Courts with a limitation of one Judge for each such court, and an amendment of another section of the constitution, which specifies the courts and commissions in which the judicial power of the State shall be vested, gives the legislature authority to create "other courts or commissions," such amendment will not be regarded as authorizing more than one Judge for each Judicial Circuit when the terms of the amendment do not clearly show such an intent.

Section 1 as amended in 1913-14 vesting the judicial

power of the State in enumerated courts and giving express authority to the legislature to create "other courts or commissions," does not by any fair construction show an intent to authorize more than one Judge for each Jucial Circuit, when Section 8 as amended in 1901-2 expressly limits the number of Judicial Circuits and also the number of Circuit Judges to one for each Circuit.   This is particularly so when the provisions   of Section 35 as amended in 1909-10 authorizing "additional Judicial Circuits" and  "additional Circuit Judges therefor," showed an intent to remove the fixed limitations of Section 8 only as to the number of Judicial Circuits, and not as to the number of the Judges for each Circuit.   The Legislature has express authority to create and establish additional Judicial Circuits and to ordain and establish "other courts or commissions" than those enumerated in the constitution; but no authority is given the legislature to provide for more than one Circuit Judge for any Judicial Circuit. On the contrary the constitution expressly provides for and limits the number of Circuit Judges to "one judge" for "each Circuit."   If it had been intended to change the long existing and only system of Circuit Courts in the State wherein only one judge is assigned to a Circuit, apt words would have been used.   People *ex rel.* Snyder v. Hylan, 148 N. Y. S. 287.   The system in operation from the beginning of the State government should not be changed by strained implications sought to be drawn from language that is grammatically and legally plainly referable to and consistent with the long existing and only system known to the State.   If legislative power exists to provide for more than one judge for any Judicial Circuit, the failure to exercise it does not affect the power.   But

VOL. 70, JUNE TERM, 1915.        141

State ex rel. West v. Butler.—Opinion of Court.

where the power does not exist  it cannot be exercised whether previously attempted or not.

Section 4 of the Declaration of Rights provides that "all courts in this State shall be open, so that any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay." This organic provision does not in any way affect the power of the legislature under the specific express requirements and limitations that are applicable in providing for Circuit Courts and Circuit Judges in this State.

Sections 1 and 35 of Article V as amended subsequent to the amendment of Section 8 do not relate to the same subject to which amended Section 8 relates, they were not adopted for the same purpose and their provisions are not so irreconcilably in conflict with and repugnant to Section 8 as to make Sections 1 and 35 as amended either repeal, amend or modify the express provision and limitation of Section 8 as amended in 1901-2, that "one judge shall be assigned to each Circuit." On the contrary the language of amended Sections 1 and 35 as we construe it, is in entire accord with the quoted provision of amended Section 8; and Sections 1 and 35 can be rendered repugnant to the stated part of Section 8 only by a construction that is not warranted by a consideration of all the organic provisions affecting the subject.

The amendments to the judiciary article of the constitution considered separately or collectively do not contain apt words to disclose an intent to change the only system of Circuit Courts known to the history of the State. On the contrary the terms and scope of the amendments refer to, accord with and show an intent to continue the long existing system, and do not show an in-

tent to depart from or to change the established system of Circuit Courts with one Circuit Judge for each Judicial Circuit.   Sections 1 and 35 as amended do  not revise Section 8 or prescribe the only rule applicable to the subject matter of Section 8.   F. E. C. Ry. v. Hazel, 43 Fla. 263.

However desirable it may be to provide for more than one Circuit Judge in a Judicial Circuit  of the State in which multiplied and rapidly increasing litigation keeps pace with vastly increased population, property, values, business and commerce, the inconvenience necessarily resulting from a lack of adequate judicial tribunals, can not lawfully be overcome by ignoring the express provisions and limitations of organic law.   The obligation of an official oath to "support, protect and defend the constitution * * * of the State," and the duty to require and give efficacy to the controlling law as it is written, preclude the giving of weight to matters of mere convenience or hardships to justify an unprecedented and quite unnatural construction of the paramount organic law that appears by its terms to be plain in the meaning and intent given to it by long usage throughout the history of the State. See Oakley v. Aspinwall, 3 N. Y. 547; Greencastle Township v. Black, 5 Ind. 557; Chance v. County of Marion, *supra;* Law v. People, 87 Ill., 385; Butler v. Andrus, 35 Mont, 575, 90 Pac. Rep. 785; Settle v. Van Evrea, 49 N. Y. 280; Keller v. State,    Tex. Crim App.    , 87 S. W. Rep. 669; State v. Martin, 60 Ark. 343, 30 S. W. Rep. 421, 28 L. R. A. 153.   In the construction of the constitution, courts have nothing to do with the argument from inconvenience—their duty being simply to declare what the constitution has said.   Greencastle Township v. Black, *supra.*

The constitution was intended to be exact in its limitations of power, not to be changed except in such particular and deliberate way as to render as certain as practicable that the electors desired it, evidenced by an expression of judgment after ample time and facility for investigation and maturity of thought on the  subject. State *ex rel.* Mueller v. Thompson, 149, Wis. 488, 137 N. W. Rep. 20, 28 Ann. Cas. 774.

In so far as the quoted statute provides for two Circuit Judges for one Judicial Circuit, it is in direct conflict with the still potential provision and limitation of Section 8 of Article V, that "one Judge shall be assigned to each Circuit;" consequently such provision of the statute is inoperative, and the appointment of the respondent as Circuit Judge for a Circuit in which there is already one Circuit Judge, is without authority of law under the Constitution of his State.

Let a judgment of ouster be entered.

TAYLOR, C. J., and SHACKLEFORD, J., concur.

COCKRELL and ELLIS, JJ., dissent.

TAYLOR, C. J., (*Concurring.*)   I concur in the opinion prepared by Mr. Justice WHITFIELD.   The question presented turns upon the proper interpretation of Section 35 of Article V of our Constitution as amended in 1910, to read as follows: "No courts other than herein specified shall be established in this State, except that the Legislature may provide for the creation and establishment  of such additional Judicial Circuits as may from time to time become necessary, and

for the appointment by the Governor and confirmation by the Senate of additional Circuit Judges therefor," &c., and upon the provision in Section 8 of Article V that reads as follows: "And one judge shall be assigned to each Circuit." The contention is that the use of the plural word "judges" in Section 35 cuts down the inhibition contained in Section 8 above against the assignment of but a single judge to any judicial circuit, and permits the assignment of two or more Circuit Judges to any Judicial Circuit. This contention is I think a strained construction of the organic provision, and is untenable. The collective plurals "Judicial Circuits," had been used in same sentence of the section just previously to the provision for the appointment of "additional Circuit Judges therefor," and to be grammatically correct, where the section was expressedly dealing with a plurality of Circuits, in providing judges for such *plurality of Circuits* the plural word "judges" had to be used. To what does the word "therefor" in the section refer? Clearly to the collective plural "Judicial Circuits" just preceding it. It is perfectly clear to my mind that the section uses the plural word "judges" not with reference to any *single circuit,* but expressedly uses it collectively with reference to a plurality of Circuits. If the construction contended for is permissible from the use of the plural word "judges" in this section then it is inevitable that every *single* judicial circuit established since the adoption of the amendment *must* have assigned to it more than one or a plurality of Circuit Judges in order to a compliance with the organic law, since the Section 35, if so construed, does not leave it to the discretion of the legislature to provide for one or more judges for any one of such additional judicial circuits, but for "additional *judges* therefor." I cannot give my

consent to the construction contended for, when its adoption would uproot the settled and undeviating policy of this State from its admission into the Union as a State until this time, and when the contrary construction has been put upon the section by the legislature and by the people at the polls in the adoption in 1912 of Section 42 to Article V of our organic law expressly permitting the appointment in Duval County of one more Circuit Judge in addition to the one already assigned to the Fourth Circuit. I therefore concur in the conclusions reached by Mr. Justice WHITFIELD.