STATE *v.* MARTIN.

Opinion delivered March 16, 1895.

| 60 | 343 |
| 77 | 386 |
| 60 | 343 |
| 80 | 374 |
| 60 | 343 |
| f89 | 459 |

*Constitutional law—Creating additional circuit judges.*

Sec. 13, art. 7, Const. 1874, which provides that "the State shall be divided into convenient circuits, each circuit to be made up of contiguous counties, for each of which circuits a judge shall be elected," does not limit the number of circuit judges in a circuit, nor prohibit the legislature from adding additional judges to a circuit when needed.

Petition for Quo Warranto.

### STATEMENT BY THE COURT.

On the 8th day of February, 1895, the Legislature passed an act entitled, "An act to provide for an additional circuit judge for the sixth judicial circuit, and to regulate the practice in the circuit court of Pulaski county."

The act, commencing with the preamble, is as follows : "Whereas, the increase of population and of judicial business in the sixth judicial circuit, of which Pulaski county. is part, is so great that the courts provided by law cannot protect the people in their constitutional right to obtain justice promptly and without delay, and in criminal prosecutions cannot afford the accused a speedy trial, as guaranteed by the constitution ; therefore, *Be it enacted by the general assembly of the State of Arkansas, that—*

"Section 1. Hereafter there shall be an additional judge of the circuit court for the sixth judicial circuit.

"Sec. 2. The circuit court of Pulaski county shall be divided into two divisions, to be known as the First and Second Divisions.

"Sec. 3. The circuit judge now in office shall hold the court for the First Division ; the judge provided for

by this act shall hold the court for the second division, and their successors shall severally do the like, and said judges shall be elected and appointed for each division separately. Where the dispatch of the business of the court shall render it expedient, either judge may hold the court of the other division." Acts 1895, ch. 7, p. 9.

The remaining sections provide for the method of procedure in the respective divisions, the holding of court in Perry county by either judge, payment of salary, etc. It is unnecessary, for the purposes of this decision, to set them out. On the 12th day of February, 1895, the Governor appointed Joseph W. Martin, Esq., "as judge of the circuit court for the second division of the sixth judicial district." On the same day he received his commission from the Governor, and qualified as the law provides, and entered upon the discharge of the duties of the office.

The State, through her Attorney General, filed an information with the clerk of this court, and applied for a writ of quo warranto. The respondent waived the writ, entered his appearance, and filed his response, setting up his authority to hold the office, by virtue of the act above recited, and his appointment and commission by the Governor. The State demurs to the response, and the question arises on the demurrer.

*E. B. Kinsworthy*, Attorney General, *John M. Rose* and *Williams & Bradshaw* for petitioner.

The act is unconstitutional. There can be but *one* judge of a circuit. "A" means one. For examples, see art. 4; art. 5; art. 6, sec. 1; art. 7, sec. 1; *Ib.* secs. 13 and 21. The same language "a" is used as a Governor, a Secretary of State, etc. There can be but *one* incumbent in office. See Fitnam's Trial Procedure, sec. 18, p. 21. When words admit of but one meaning, that meaning is to be accepted. The intent must be ascer-

tained by means of the words used. Endl. Int. Stat. secs. 7, 8, 72. Words are presumed to be used in their ordinary acceptation, and that what is *said* is *meant.* *Ib.* secs. 23, 265. "A" judge means *one* judge. Webster, Dict., Ed. 1852. The bill of rights and the constitution are one instrument, and should be construed together as a whole, and if the constitution differs from the bill of rights, the former must limit and qualify the latter. Endl. Int. Stat. secs. 515, 516. All the cases we find hold that there may be as many districts or circuits as the legislature see proper, but for each district there can be only one judge, unless otherwise specially provided in the organic law. 45 N. W. 598; 19 *id.* 332; 15 So. 641; 36 Pac. 218; 34 N. E. 877; 13 S. W. 778; 21 N. E. 274; 20 Pac. 872; 42 N. W. 1002; 21 N. E. 244.

In construing a constitution no word is to be rejected or disregarded which may have a material meaning or bearing on the rights of citizens, and such construction should be given as will best preserve the interests of citizens, and their private rights, giving every word its meaning. 3 Hans. 240; 34 Am. Dec. 81. The expression of one thing in a constitution is necessarily the exclusion of things not named. 4 Cal. 46; 60 Am. Dec. 582; 49 Ark. 232. Inhibitions by implication are as effective as by expression. 58 Pa. St. 338; 98 Am. Dec. 272. The cases in 75 Tex. 128, and 26 Ind. 98, do not touch the question here, as the constitutions are different. See 73 Iowa, 265, which is in point.

It is true, the constitution is not a grant of, but a limitation upon, power, and that all powers not prohibited impliedly exist, but this rule only applies to those general subjects of legislation that affect the welfare of the people. (1) There are no negative inhibitions necessary to protect the people from legislation which infringes the affirmative declarations of the bill of rights. (2) None are necessary to prevent the legislature from

touching the machinery of government created by the constitution. In it the existence of the government inheres—it is the beginning and end of legislative power in that respect.

*Rose, Hemingway & Rose, S. R. Cockrill, J. M. Moore, Ratcliffe & Fletcher, Blackwood & Williams, Jones & McCain,* and *Morris M. Cohn,* for appellee.

The act is not in contravention of either the spirit or letter of the organic law. If the legislature has power to pass such a bill, they are the sole judges as to whether the emergency which makes such legislation expedient or necessary has arisen. 35 Ark. 73 ; 48 *id.* 384. The courts have nothing to do with the policy of legislation. Black, Const. Law, sec. 33. The preamble of the act settles the question of the necessity for the act.

Theoretically, a constitution is supposed to be created for all time. 6 Wheat. 387. But it is left to the legislature to adopt its own means to effectuate legitimate objects, and to mould and model the exercise of its powers as its wisdom and the public interests may require. 1 Wheat. 326.

No court is authorized so to construe any clause of a constitution as to defeat its obvious intent or ends, when another construction will enforce and protect them. 16 Pet. 612. Discretion must be lodged somewhere. 6 Wheat. 226.

In construing a constitution every part of it must be considered. 24 Ark. 288. And no interpretation of any part is allowed that will conflict with any other of its provisions. 9 Ark. 271, 281. The bill of rights provides for *speedy* trials, and certain, prompt remedies. Secs. 10 and 13. The legislature is clothed with power to furnish the necessary tribunals to dispose promptly of cases pending. 33 N. W. 433. The bill of rights is of paramount importance, everything in it being ex-

cepted out of the general powers of the government; it being declared that it "shall forever remain inviolate." It provides for subjects far more important than those referred to in other parts of the constitution, and the latter should be made to bend to the former in all processes of interpretation.

A constitution should receive a fair and liberal interpretation, *so that the true objects of the grant may be promoted* and the government left in the full and free exercise of all its rights, privileges, etc., which are not. excepted out of its ordinary and general powers. 9 Ark. 276. Every presumption is in favor of the constitutionality of an act. All doubts are resolved in its favor. 49 Ark. 232; 39 *id.* 355; 52 *id.* 339; 11 id. 481; 27 *id.* 352. The power of the legislature is not to be restricted by inference. *Ib.*

"A circuit judge does not imply that there may not be more than one if more are needed. 141 Mass. 257; 8 Man. Gr. & S. 849; 6 Best & S. Q. B. 970; Sand. & H. Dig. 7196; 31 Ark. 271. No technical, strict construction should be given. 12 Ark. 563; 38 Ark. 564; 48 *id.* 385; 42 *id.* 161; 26 *id.* 74; 9 Ark. 287; 20 *id.* 212; 49 *id.* 227; 45 *id.* 400; 49 *id.* 376; 47 *id.* 481; 15 *id.* 664; 35 *id.* 390; 14 *id.* 687; 47 *id.* 323; 49 *id.* 350; *Ib.* 519. These cases all depend on the principle that the legislature may do anything not forbidden by the language of the constitution, or by necessary implication from its language. See 15 Ark. 623; 75 Tex. 129; 26 Ind. 98; 12 S. E. 206; 4 Ark. 460.

Except in the case of the Supreme Court (art. 7, sec. 1), no effort is made to limit the number of courts. A circuit judge is not a State officer within the meaning of sec. 19, art. 19. Nor was any new office created by the act. The office is created by the constitution. See, also, 20 Pac. 872; 41 N. W. 645; Cooley, Const. Lim.

'71, 204 ; 4 Wheat. 407 ; 16 Ark. 364 ; 62 Penn. 348 ; 15 N. Y. 543 ; 1 Ark. 538 ; 48 N. W. 819.

WOOD, J., (after stating the facts). The State contends that the act is in conflict with sec. 13 of art. 7 of the constitution, which is as follows : "The State shall be divided into convenient circuits, each circuit to be made up of contiguous counties, for each of which circuits a judge shall be elected ;. who, during his continuance in office, shall reside in and be a conservator of the peace within the circuit for which he shall have been elected." It is contended that the word or letter "a" before the word "judge" in the above section is a limitation upon the power of the legislature to provide for more than one judge in a judicial circuit.

We must keep to the front certain familiar but unvarying rules when we come to interpret the provisions of any section of a constitution. (1) Unambiguous words need no interpretation. (2) Where construction is necessary, words must be given their obvious and natural meaning. (3) The words or provisions under consideration must be construed with reference to every other provision, so as to preserve harmony in the whole instrument. (4) The intent of the framers, gathered from both the letter and spirit of the instrument, is the law. Potter's Dwarris, 203, note 20 ; Sedg. on Stat. & Const. Law, 195, 413 ; *Beavers* v. *State, ante,* p. 124 ;. *State* v. *Scott,* 9 Ark. 271 ; *Hawkins* v. *Filkins,* 24 *id.* 288. Then, when we come to pass upon the constitutionality of an act of the legislature, .we must remember that a State constitution is not a grant of enumerated powers. Its object is to outline the departments of government and apportion its various powers among them. Having vested the law-making power in the legislature, it possesses that power in an absolute and unlimited degree, unless the restriction is found in the constitution itself. Cooley, Const. Lim. 200, 201, 206. Hence we always

look to see, not whether the power is given, but whether, in express term or by necessary implication, it is forbidden. Cooley, Const. Lim. 204, 206 ; *Neal* v. *Shinn*, 49 Ark., 227; *Scales* v. *State*, 47 Ark. 481 ; *Sill* v. *Corning*, 15 N. Y., 297 ; *Sears* v. *Cottrell*, 5 Mich. 251.

Judicial interposition to avoid an act of the legislature is never justified unless it is clear, beyond rational controversy, that it has passed the bounds set by the fundamental law. *Com.* v. *McCloskey*, 2 Rawle, 374 ; *Weister* v. *Hade*, 52 Pa. St. 474 ; *New York Central Railroad Co.* v. *People*, 24 N. Y. 504; *People* v. *Supervisors*, 27 Barb. 575 ; *Cochran* v. *Van Surlay*, 20 Wend. 365, and other cases cited in Cooley's Const. Lim. 204, 205, 216, 217 ; *Carson* v. *St. Francis Levee District*, 59 Ark. 513.

Now, the adjective "a," commonly called the "indefinite article," and so called, too, because it does not. define any particular person or thing, is entirely too indefinite, in the connection used, to define or limit the number of judges which the legislative wisdom may provide for the judicial circuits of the State. And it is. perfectly obvious that its office and meaning were well understood by the framers of our constitution ; for nowhere in that instrument do we find it used as a numerical limitation.

It is insisted that if "a" does not mean one, and but. one, in the section quoted, then the way is open for a. latitudinarian construction in the various other sections. where it occurs; and that the number of Governors, Attorneys General, Secretaries of State, Auditors, General Assemblies, etc., we are to have, depends only upon legislative caprice. Let us see. Sec. 1, art. 6, of the constitution provides : "The executive department of this. State shall consist of a Governor, Secretary of State, Treasurer of State, Auditor of State, and Attorney General." No one would contend that there could be more

than one of each of these functionaries, but the limitation is not found in the use of the letter "a." It is in the name of the office and officer created. The idea of two Governors, Secretaries of State, Treasurers, etc., is unknown in the history of the formation of State governments in this republic. It would be utterly incompatible with the duties of these officers to have a divided department, and a head for each. Moreover, other sections may be looked to as defining the number as to the executive. For instance, sec. 2 provides : "The supreme executive power of this State shall be vested in a *chief magistrate* who shall be styled "the Governor of the State of Arkansas." See also sec. 6. *There can be but one chief magistrate, one commander in chief.* Take the legislative department. Sec. 1, art. 5, is as follows : "The legislative power of this State shall be vested in a general assembly, which shall consist of the senate and house of representatives." Sec. 18. "Each house, at the beginning of every regular session of the general assembly, and whenever a vacancy may occur, shall elect from its members a presiding officer, to be styled, respectively, the president of the senate and the speaker of the house of representatives." Reference is made in the brief of counsel to these sections, and it is urged that unless "a" is a limitation to one, and but one, in sec. 13, art. 7, there is nothing to inhibit more than one general assembly, one president of the senate and one speaker of the house. But again it is patent that the limitation to one general assembly is not in the use of the letter "a," but is referable to the principle that there can be but one supreme legislative power in a State. That sovereign power being delegated by the constitution to a general assembly, it cannot create another general assembly, and delegate to it the same power. So far as the president of the senate and speaker of the house are concerned, they are *presiding* officers. There

can be but one *presiding* officer.   The limitation is in the word "presiding," not in the letter "a."

Now, in other sections we find the word *one* used. Sec. 28, art. 7, provides that "the county court shall be held by one judge, except in cases otherwise herein provided."   Sec. 39.   "For every two hundred electors there shall be elected one justice of the peace, but every township, however small, shall have two justices of the peace."   Sec. 46.   "The qualified electors of each county shall elect one sheriff,   *   *   *   one assessor, one coroner, one treasurer."   So the convention, when limiting the number, used the numerical adjective, or other terms, which in themselves expressed affirmatively the idea of one, and hence excluded that of any more.   This fact, when we consider that constitutions are framed for ages to come, affords the most plausible argument that the framers of our constitution purposely omitted limiting the number of circuit judges, in anticipation of any emergencies in the speedy administration of justice occasioned by the increase of population and the accumulation of litigation.   Especially is this argument strengthened by the fact that judicial circuits were to be composed of contiguous counties, many of which, like Pulaski, were already large, and contained cities that were rapidly increasing in business and inhabitants.   It required no great amount of prescience to discover and provide for the very contingency which is revealed by the preamble to this act.   But if, on the contrary, it could be said that the convention had no consideration for the future, and only intended to provide for existing conditions, and that one judge for a circuit was deemed sufficient to meet the requirements of justice at that time, then the conclusion is irresistible that they did not intend to prohibit what they did not contemplate would ever be demanded.   *Lytle* v. *Halff*, 75 Texas, 136.   This is all that is necessary to maintain

the validity of the act in controversy. It is undoubtedly true that the convention intended to provide for at least one judge for a judicial circuit. But, unless they also intended to prohibit the creation of more, the act must stand.

So the question recurs as to the significance of the letter "a," for the convention must be taken to have meant what they have plainly said. It performs precisely the same office here as in every other section where it occurs. Sec. 6 of art. 7 says: "A judge of the Supreme Court shall be learned in the law," etc. Sec. 16 says: "A circuit judge shall be learned in the law," etc. Sec. 41: "A justice of the peace shall be a qualified elector, and a resident of the township," etc. Does the word "a" in these sections mean one and only one judge or justice? If so, which one? In the same section in which "a judge" occurs we find, "He shall be 'a' conservator of the peace within the circuit." Does "a conservator" mean that he is to be the only conservator of the peace for the circuit? If so, this provision is plainly in conflict with others. See secs. 4 and 40. It is apparent that "a" was used before the word "judge" in the section under consideration because, according to our English idiom, the sentence could not have been euphoniously expressed without it. In some languages, the Latin and Russian for instance, it would not have been used at all. It could have been omitted without in the least impairing the sense, and its use gave no additional force or meaning to the sentence. To use the illustration of the learned counsel for the State, "if one orders 'a sack of flour, a ham, a horse, a ton of coal,'" etc., it is understood he means but one. So it would be understood if he left off the "a," and said sack of flour, ham, horse, ton of coal, the "a" being used before the words beginning with the consonant sound simply to preserve the euphony. If the limitation is not in the word "judge,"

without the "a," there is certainly no restriction with it. According to Mr. Webster, "a" means one or any, but less "emphatically than either." It may mean one where only one is intended, or it may be any one of a great number. That is the trouble. Of itself, it is in no sense a term of limitation. If there were a dozen judges in any one circuit, each would still be "a judge" for that circuit. Mr. Webster also says: "It is placed before nouns of the singular number, denoting an individual object, or quality individualized." Quality is defined as (1) "the condition of being of such a sort as distinguished from others; (2) special or temporary character, profession, occupation." Webst. Dic. The "a" was so used here. The character or profession individualized was that of *a judge.* The functions of the office to be performed were those of "a judge," not Governor, sheriff, or constable.

A review of the various other provisions of the constitution, *supra*, where the word "a" occurs, shows that no absurd consequences, such as filling the offices in other departments with a multitudinous array of incumbents, could possibly result.

We have not been furnished with any case exactly parallel with the case at bar, but some of those cited in brief of counsel are strongly persuasive. The constitution of Georgia provided: "There shall be a judge of the superior courts for each judicial circuit, whose term of office shall be four years, and until his successor is qualified. He may act in other circuits when authorized by law." It also provided that "the superior courts shall sit in each county not less than twice in each year, at such times as have been or may be appointed by law." The legislature made provision, in counties having ten thousand inhabitants, "that two or more judges of the superior court may preside in bank, or that said courts may be held in two or more sections at the same time by

different judges in any separate rooms in the court house or at the county site, as may be convenient." The district courts of Georgia had both civil and criminal jurisdiction. In *Bone* v. *State.* 86 Ga. 108 (12 S. E. 206), the defendant was convicted of murder. In his motion for new trial he assigned as error "that Richard H. Clarke, the presiding judge, had no authority to hold the superior court of Fulton county, for the reason that he was judge of another district, and for the further reason that Marshall J. Clark, the judge of the district, was at the same time holding and presiding over the superior court of Fulton county, then in session and engaged in the trial of civil business in the room provided for the superior court." The Supreme court of Georgia, in passing upon this assignment, said : "The constitution requires at least two sittings of the superior court in each county, but does not prohibit more sittings to be held, nor does it prohibit two or more sections of the superior court presided over by different judges, sitting at the same time, where the interest of the public requires the same to be done, so that justice shall not be denied to any one. Nor is it unconstitutional because it provides for this scheme only for counties containing large cities, the legislature having power to classify in general terms." The court, it will be observed, was divided into two sections, and two judges were holding court at the same time in the district. The constitution (like ours) said there shall be "a judge," not two judges, for each circuit. And if the legislature had the power to divide the district into divisions, and create a place to be filled by another judge, we think it can make but little difference whether he be called from another circuit, which was allowable, or whether he be elected especially for the place. The point at last is that there were two divisions of the court, and two judges holding court in the same circuit at the same time, and each performed all the duties of

a circuit judge for that circuit while thus engaged in holding the court. See, also, *Combs* v. *State*, 26 Ind. 98; *In re Lloyd*, 20 Pac. 872; *Lytle* v. *Halff*, 75 Texas, 129.

But we need not go beyond our' own decisions for authority to maintain the constitutionality of the present act. Our constitution provides that "no county seat shall be established without the consent of *a majority* of the qualified voters of the county." Sec. 3, art. 13. In *Vance* v. *Austell*, 45 Ark. 400, this court held that this meant a majority of the votes of qualified voters at a legal election on that question, and that there must be such a majority before the change could take place. But the court also held that there was nothing to prohibit the legislature from requiring "an additional or higher condition for removal." A majority in that case was the minimum. "A judge" in the present case is the minimum. The cases cannot be distinguished in principle. The constitution requires "a judge" for each circuit, and there must be at least one judge. But where is the limitation upon the legislature to provide for more if the necessity arises? See also *St. Francis Levee Dist.* v. *Carson*, 59 Ark. 513; *Neal* v. *Shinn*, 49 Ark. 227; *Saunders* v. *Erwin*, 49 *id.* 376; *Scales* v. *State*, 47 Ark. 481; *Walker* v. *State*, 35 Ark. 390; *Davis* v. *Gaines*, 48 Ark. 385; *Williamson* v. *Mimms*, 49 Ark. 350; *St. Louis R. Co.* v. *State*, 47 Ark. 323; *State* v. *Nichols*, 26 Ark. 74; *City of Little Rock* v. *Board of Imp.* 42 Ark. 161. These cases, and others cited in brief of counsel, show that this court is thoroughly committed to the doctrine that the maxim "*Expressio unius est exclusio alterius*" is not to be applied with the same rigor in construing a State constitution as a statute; and that only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the legislature.

The first section of art. 7 of the constitution is : "The judicial power of the State shall be vested in one supreme court, in circuit courts, in county and probate courts, and in justices of the peace." Here the constitution expressly creates the office of circuit court. So that the act under consideration creates no new office, and confers no new jurisdiction, nor does it in any manner change or take away any jurisdiction already conferred by the constitution. The jurisdiction of Judge Martin is just the same as that of any other circuit judge in the State, and the only difference between the sixth circuit and the other circuits is that the sixth has two divisions and an incumbent for each division. The Governor had the power to fill the vacancy in the second division by appointment. *Smith* v. *Askew*, 48 Ark. 82. Nowhere do we find any limitation upon the number of circuit judges for a circuit. Secs. 13, 17, 18, art. 7, Const. The number is left to the sound judgment of the legislature, and it cannot be presumed that they will ever abuse their discretion.

In coming to this conclusion we have not overlooked the salutary doctrine that "in construing constitutions courts have nothing to do with the argument *ab inconvenienti*, and should not bend the constitution to suit the law of the hour." *Greencastle Township* v. *Black*, 5 Ind. 557, 565. And we agree fully with what is said by a distinguished judge of New York: "If the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal." *Oakley* v. *Aspinwall*, 3 N. Y. 547, 568. But we are of the opinion that this grammatical particle "a," whose office is frequently only to preserve euphony in the use of words and structure of sentences, and whose force often depends upon the mere accident of accentuation, was not used, nor was it ever intended to be used, by the framers of our organic

law, so as to obstruct and partially defeat the exalted purpose for which the circuit courts, the "great residuum of all jurisdiction," were created, namely, the speedy administration of public justice.

The demurrer is overruled, and the writ discharged.