[734 NYS2d 753]

In the Matter of WILLIAM S. COOK, SR., et al., Individually and as Trustees of the COOK FAMILY TRUST, Appellants, v CARMEN S. PARISO, INC., et al., Respondents.

Fourth Department, December 21, 2001

APPEARANCES OF COUNSEL

*Robert G. Sillars,* Clarence, for appellants.

*Getman, Biryla & Kresse, L. L. P.,* Buffalo (*Seth L. Hibbert* of counsel), for Carmen S. Pariso, Inc., and another, respondents.

*Phillips Lytle Hitchcock,* Buffalo (*Melissa Hancock Nickson* of counsel), for GBH Paving, Inc., respondent.

## OPINION OF THE COURT

KEHOE, J.

On this appeal by petitioners from an order denying their petition seeking to cancel and discharge three mechanics' liens filed against their property by respondents, the issue is whether the liens have lapsed by operation of law as a result of respondents' failure to obtain court orders extending such liens (*see,* Lien Law § 17), and whether Supreme Court thus erred in refusing to cancel and discharge such liens of record (*see,* Lien Law § 19). The underlying issue, one of first impression, is whether petitioners' property, which contains two single family residences, is "real property improved * * * with a single family dwelling" (Lien Law § 17). Based on the ordinary meaning of the article "a," other pertinent provisions of the Lien Law, and well-established canons of statutory construction, we conclude that the property is "improved * * * with a single family dwelling."

I

At all relevant times, petitioners have owned the subject property at 8320-8326 County Road in the Town of Clarence. The property consists of 5.4 acres improved with two detached single family residences. Historically treated as a single parcel for tax purposes, it is classified by taxing authorities as "Multiple Residences." Petitioners resided in the house at 8320 County Road beginning in 1968. Since building the house at 8326 County Road in the mid-1990's, petitioners have occupied it as their residence and have rented the original house to others. Petitioners allege without contradiction that both houses have always been utilized by them and/or their tenants as "single family dwelling[s]." Respondents nonetheless label the property, or at least part of it, as "commercial," based on petitioners' plan in 1998 to sell part of their property to a commercial entity for an intended commercial use. In particular, petitioners negotiated the sale of one of the houses and its surrounding land to respondent GBH Paving, Inc. (GBH) and its related entity, Tricore Development Corp. (Tricore).

In anticipation of taking title, GBH and Tricore sought to improve the property by constructing an access road and parking lot for the movement and storage of heavy equipment used by GBH and Tricore in their construction businesses. Between August and November 1998, with petitioners' knowledge and approval, GBH and Tricore contracted or otherwise arranged for various aspects of that work to be done by the three respondents, none of which was paid for its work and each of which filed a notice of mechanic's lien against the property. Respondent Carmen S. Pariso, Inc. (Pariso) filed its notice of lien on December 15, 1998, as did its apparently related entity, respondent Swift River Associates, Inc. (Swift River). GBH filed its notice of lien on February 3, 1999. By their terms, all three liens encumber both houses and all of petitioners' land, as opposed to merely the house and land that petitioners intended to sell to GBH and Tricore. Before the proposed sale fell through, petitioners never officially subdivided the property or otherwise separated the parcel to be sold from the parcel to be retained by them.

None of the lienors commenced a legal proceeding to foreclose its lien or to obtain a court order of extension within one year of filing its notice of lien. Rather, each purported to extend its lien by filing a notice of extension. Pariso and Swift River filed their notices of extension on December 15, 1999, and GBH filed its notice of extension on January 28, 2000.

II

In August 2000, petitioners sought an order "permanently canceling and discharging of record the said Mechanic[s'] Liens," pursuant to Lien Law §§ 17 and 19 (2). They argued that, because respondents did not obtain court orders within a year after filing their notices of lien, but rather improperly filed notices of extension, the liens had lapsed by operation of law.

In opposition, respondents argued that the Lien Law established no mechanism by which a court could summarily discharge a mechanic's lien in these circumstances. Respondents further argued that the subject property is not of the type described by Lien Law § 17, as it is "not improved, or to be improved, by a single family dwelling" and is not used "only * * * for single family dwelling purposes," but rather is classified by taxing authorities as "Multiple Residences." Respondents further argued that the work performed by them "was not the type of work that is conducted for the construction of single

family dwellings" and in fact "had nothing whatsoever to do with improvement to a single family dwelling." Respondents noted that the work was performed at petitioners' request and "in connection with the improvement of a section of the property to be sold by Petitioners to GBH for use in a commercial capacity."[1]

Supreme Court denied the petition.

## III

The issue is whether petitioners are entitled to cancellation and discharge of the liens pursuant to Lien Law § 19 based on respondents' failure to obtain court orders of extension pursuant to Lien Law § 17, or whether valid extensions of the liens could be obtained by respondents (thereby extending their time for commencing legal action to foreclose or extend the liens) simply by filing notices of extension. Resolution of that issue hinges on whether the subject property is "real property improved * * * with a single family dwelling." In that connection, Lien Law §§ 17 and 19 (2) variously provide for the "extinguish[ment]," "terminat[ion]," or "discharge[ ]" of a lien unless an action to foreclose such lien or to secure an order continuing it has been commenced within one year of filing of the notice of lien, or

> "unless an extension to such lien, *except for a lien on real property improved or to be improved with a single family dwelling*, is filed with the county clerk * * * within one year from the filing of the original notice of lien, continuing such lien" (Lien Law § 17 [emphasis supplied]).

Lien Law § 17 further provides that "[a] *lien on real property improved or to be improved with a single family dwelling may only be extended by an order* of a court of record, or a judge or justice thereof" (emphasis supplied). Because respondents did not obtain court orders of extension, their liens are subject to discharge (*see*, Lien Law § 19 [2]) unless the encumbered realty is not "real property improved * * * with a single family dwelling" (Lien Law § 17).

## IV

Based on our reading of the statute, we conclude that petitioners are entitled to an order discharging the liens. At

---

**1.** Respondents offered before Supreme Court to amend their notices of lien so as to encumber the "commercial parcel" only, but seem to have retracted that offer on appeal.

the outset, we reject respondents' contentions that this proceeding does not lie pursuant to Lien Law § 19 (6) and that petitioners, because of asserted deficiencies in their papers before Supreme Court, may not rely on other statutes as a basis for relief. Lien Law § 19 (6), which relates to discharge of a lien based on a defect in the notice of lien, has no application to this case. In their initiating papers, petitioners properly relied on Lien Law §§ 17 and 19 (2), which seemingly provide for the extinguishment, cancellation or discharge of a lien automatically or by operation of law, upon the lapse of the one-year period (see, Lien Law §§ 17, 19 [2]; *Gallo Bros. Constr. v Peccolo,* 281 AD2d 811, 813; *Green Elec. Contrs. v SMG Constr.,* 279 AD2d 287; *L & M Plumbing v Decker,* 219 AD2d 619, 619-620, *lv denied* 87 NY2d 806; *Matter of Fidelity & Deposit Co. of Md.,* 75 AD2d 707; *Matter of Thirty-Fifth St. & Fifth Ave. Realty Co.,* 121 App Div 625). Nevertheless, case law authorizes an application to vacate or cancel a mechanic's lien based on the lienor's failure to take the steps necessary to perfect it (see, *Matter of Kushaqua Estates v Bonded Concrete,* 215 AD2d 993, 994; *Matter of Onorati v Testco, Inc.,* 204 AD2d 876, 877; *Matter of Cake Stylists v Town & Country Plumbing & Heating Co.,* 197 AD2d 687, *appeal dismissed and lv denied* 83 NY2d 795; *Matter of Flintlock Realty & Constr. Corp.,* 188 AD2d 532, 533; *Modular Steel Sys. v Avlis Contr. Corp.,* 89 AD2d 891; *Matter of Malafsky v Becker,* 255 App Div 444, 445, *appeal conditionally dismissed* 280 NY 685; *Hanson Heating & Plumbing v Stout,* 88 Misc 2d 241, 241-242; *cf.,* Lien Law § 59).

Turning to the issue whether the encumbered property is "real property improved * * * with a single family dwelling" (Lien Law § 17), we reject respondents' contention that the property may be characterized as commercial in part or in whole. Respondents unduly emphasize petitioner's plan to sell part of their property to commercial entities that, in anticipation of sale, arranged for respondents to perform certain work on that parcel to equip it for eventual commercial use. Under the circumstances at bar, we conclude that the property may not be classified as commercial based either on the nature of the work performed or on an intended commercial use that never came to pass. Those considerations do not alter the undisputed fact that the property has at all times—even during the period of construction—been used solely for residential purposes.

The crux of this case is whether property may be deemed "improved * * * with a single family dwelling" (Lien Law § 17)

where it is improved with *two* single family dwellings. Focusing on the article "a," which they construe as necessarily meaning "one and no more," respondents contend that the statute refers to one "single family dwelling" only, and not to multiple single family residences. They contend that for this Court to interpret the statute otherwise would constitute an impermissible judicial amendment of the statute "so as to enlarge its clearly defined scope and purpose" (*Raymond Concrete Pile Co. v Federation Bank & Trust Co.*, 288 NY 452, 463, *rearg granted* 289 NY 650, *original decision adhered to* 290 NY 611).

We reject that contention based on the ordinary meaning of the *indefinite* article "a." Although "a" may mean "one" where the overall tenor of the statute connotes such meaning, that is neither the usual meaning of the word generally, nor the most reasonable meaning of the word given the particular circumstances and statutory language at issue here. Recognizing that a contrary interpretation of the article "a," if adopted generally, would lead to no end of absurd statutory constructions, those courts that have considered the issue have held that the usual and ordinary meaning of "a" is not "one and only one," but rather "any number of" or "at least one"—not "one and no more," but rather "one or more" (*see, Application of Hotel St. George Corp.*, 207 NYS2d 529, 531, citing *Lindley v Murphy*, 387 Ill 506, 517, 56 NE2d 832, 837-838; *State v Martin*, 60 Ark 343, 349-351, 30 SW 421, 422-423; *cf.*, *Lewis v Spies*, 43 AD2d 714, 715-716). For that reason, the article "a" generally is not to be read in the singular sense unless such an intention is clearly conveyed by the language and structure of the statute (*see, Application of Hotel St. George Corp., supra,* at 531, citing 1 CJS, A, at 1; *State v Martin, supra,* 60 Ark, at 349-351, 30 SW, at 422-423; *see also, State ex rel. Cities Serv. Oil Co. v Board of Appeals,* 21 Wis 2d 516, 529, 124 NW2d 809, 816; *Lindley v Murphy, supra,* 387 Ill, at 517, 56 NE2d, at 838; *see generally,* 97 NY Jur 2d, Statutes, § 129). In view of that general understanding of the article "a," we cannot adopt the peculiar construction of the statute advanced by respondents, who insist that the liens are effective against *both* single family dwellings even though the liens plainly would be ineffective as against *either* of the dwellings. It must be concluded, therefore, that petitioners' property is "improved * * * with a single family dwelling" (Lien Law § 17), meaning at least one such dwelling.

Nor can we conclude from the language and structure of the Lien Law as a whole, particularly the definitional provision of

Lien Law § 10 (former [1]), that "a" means "only one" single family residence. Lien Law § 10 (former [1]), like section 17, favors the owners of "real property improved or to be improved with a single family dwelling" (Lien Law § 10 [former (1)]). Although Lien Law § 17 does not define that phrase, section 10 (former [1]) provided when this dispute arose:

> "[T]he term 'single family dwelling' shall not include a dwelling unit which is a *part of a realty subdivision* as defined in section eleven hundred fifteen of the public health law *when* at the time the lien is filed, the *dwelling unit is owned by the developer for purposes other than his personal residence.* * * * '[D]eveloper' shall mean and include any private individual, partnership, trust or corporation which *improves five or more parcels of real property with single family dwellings* pursuant to a common scheme or plan" (Lien Law § 10 [former (1)] [emphasis supplied]).[2]

Clearly the Legislature's purpose in so defining "property * * * improved with a single family dwelling" is to include properties, such as petitioners' property, improved with up to four single family residences. Thus, the proper interpretation of Lien Law § 17, given the complementary and elucidating text of Lien Law § 10 (former [1]), is that "property improved * * * with a single family dwelling" means property improved with between one and four single family residences.

Although Lien Law § 10 (former [1]) specifically provides that the foregoing definitional provisions are "[f]or purposes of this section," it does not provide that those definitions apply *only* to section 10 and to no other provision of the Lien Law. We cannot read Lien Law § 17 in isolation from section 10, as respondents would have us do. In referring in section 17 to "property * * * improved with a single family dwelling," the precise phrase used in section 10, the Legislature apparently intended to incorporate the same meaning set forth in section 10. Certainly that construction is preferable to respondents' interpretation that those identical phrases have different mean-

---

**2.** By recent amendment, the statute, in the first quoted sentence, now refers to a locally filed subdivision plan in place of a subdivision defined by the Public Health Law, and now refers to the number "two" in place of the number "five" in the second quoted sentence (L 2000, ch 288, § 1). The amendment does not apply retroactively to govern this property dispute, but even if it did, the newly defined exception for residential property nevertheless would encompass petitioners' property.

ings in each of those two closely related sections. That no different definition is supplied in or for the purposes of Lien Law § 17 "indicates that no departure from the statutory definition of that term was intended or implied" (*Matter of Gruber,* 89 NY2d 225, 234, citing McKinney's Cons Laws of NY, Book 1, Statutes §§ 74, 97). Moreover, "[i]t is elementary that 'where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute' (McKinney's Cons Laws of NY, Book 1, Statutes § 236, at 401; *see, Mangam v City of Brooklyn,* 98 NY 585)" (*People v Bolden,* 81 NY2d 146, 151; *see, Riley v County of Broome,* 95 NY2d 455, 466). "[A] statute or legislative act is to be construed as a whole, and * * * all parts of an act are to be read and construed together to determine the legislative intent * * * Not only are different parts of the same act interpreted together, but different acts which are in pari materia are to be construed each in the light of the other" (McKinney's Cons Laws of NY, Book 1, Statutes § 97, at 211-215; *see, Matter of Town of Yorktown v State Bd. of Real Prop. Servs.,* 275 AD2d 789, 790-791; *see also,* McKinney's Cons Laws of NY, Book 1, Statutes § 221).

> "Where one section of a statute must be relied on to construe the intent of another, neither semantics nor literal interpretation of words and phrases [is] controlling; and sections of an act must be construed in view of all of the provisions of the act as well as the general purpose and manifest policy intended by the Legislature in the enactment.
>
> "The different parts of the same act, though contained in different sections, are to be construed together as if they were all in the same section * * *
>
> "The general principle that a statute must be construed as a whole and that its particular parts, provisions, or sections be considered together and with reference to each other ha[s] been applied in the construction of various particular statutes or enactments, as for example * * * the Mechanic's Lien Law" (McKinney's Cons Laws of NY, Book 1, Statutes § 97, at 215-217).

Clearly, sections 10 and 17, being in pari materia, must be read together (*see,* McKinney's Cons Laws of NY, Book 1,

Statutes §§ 97, 98, 221). They are parts of a single legislative scheme designed to accord significant procedural protections and substantive preferences to owners of certain favored residential property. Lien Law § 10 (former [1]) shortens (from eight months to four) the time for filing a lien against certain residential property, as defined by the statute (*see generally, Matter of City of Albany Indus. Dev. Agency v DeGraff-Moffly/Gen. Contrs.,* 164 AD2d 20, 22; *Ward-Carpenter Engrs. v Sassower,* 163 AD2d 304, 305; *Metivier v Sarandrea,* 154 Misc 2d 355, 358, *affd for reasons stated* 187 AD2d 963). Similarly, Lien Law § 17 restricts the methods for obtaining extensions of liens against such residential property, in order to "limit the period of time [such] real property could be burdened by a mechanic's lien" (*Matter of Fidelity & Deposit Co. of Md., supra,* 75 AD2d 707). We thus conclude that, insofar as petitioners' property falls within the scope of Lien Law § 10 (former [1]), it also falls within the scope of section 17.

*Griffin Bldg. & Constr. Corp. v RHD Constr. Corp.* (133 Misc 2d 335, 336-337) is not to the contrary. That decision predated the amendment of Lien Law § 10 defining "property * * * improved with a single family dwelling" as including a subdivision or housing development improved or under improvement by up to four single family residences (*see,* L 1988, ch 335, § 1). In any event, *Griffin,* unlike this case, concerns a lien filed against a subdivision or housing development described as a "collection of" "many single-family residences" (*Griffin Bldg. & Constr. Corp. v RHD Constr. Corp., supra,* at 336).

Accordingly, the order should be reversed and the petition granted.

PIGOTT, JR., P. J., GREEN, WISNER and BURNS, JJ., concur.

Order unanimously reversed, on the law, with costs, and petition granted.